# EXHIBIT A

JEFFREY C. SPARKS (SBN 126355)
MOORHEAD & SPARKS
229 Avenue I, Second Floor
Redondo Beach, California 90277-5600
Telephone: (310) 540-1332
Fax No.: (310) 540-8480

Attorney for Plaintiff, JAMES YORK

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

OCT 30 2014

Sherri R. Carter, Executive Officer/Clerk
By Myrna Beltran, Deputy

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES- CENTRAL DISTRICT

| | |
|---|---|
| JAMES YORK,<br><br>    Plaintiff,<br><br>vs.<br><br>INTERNATIONAL ACADEMY OF FILM AND TELEVISION, LLC; MICHAEL GLEISSNER and DOES 1 through 25, inclusive,<br><br>    Defendants. | CASE NO.: **BC562427**<br><br>JUDGE: Hon.<br>DEPARTMENT:<br><br>COMPLAINT FOR DAMAGES<br><br>1. BREACH OF CONTRACTS/FAILURE TO PAY WAGES [*Labor Code* §203];<br><br>2. FAILURE TO REIMBURSE EMPLOYER EXPENSES [*Labor Code* § 2802]<br><br>3. VIOLATION OF *Labor Code* § 970<br><br>4. WRONGFUL TERMINATION/AGE DISCRIMINATION<br><br>5. WRONGFUL TERMINATION-WHISTLEBLOWING/RETALIATION<br><br>6. DECLARATORY RELIEF/ACCOUNTING<br><br>7. EXEMPLARY DAMAGES |

## FACTUAL ALLEGATIONS

1. Plaintiff JAMES YORK (York) was the Chief Operating Officer of Defendant INTERNATIONAL ACADEMY OF FILM AND TELEVISION, LLC, which is

-1-
COMPLAINT FOR DAMAGES

headquartered in Burbank, California. Plaintiff was wrongfully terminated in violation of Public Policy by Defendants for all reasons stated herein.

2. INTERNATIONAL ACADEMY OF FILM AND TELEVISION, LLC (IAFT) is a limited liability company, organized under the laws of the State of California, with its principal business location in Burbank, California.

3. Defendant, MICHAEL GLEISSNER (Gleissner) is the sole owner of IAFT, as well the following entities: Bigfoot Entertainment, Incorporated, a California Corporation; International Academy of Film and Television, Incorporated, a Philippines Corporation; Miami Film School Holdings (BVI) Ltd., A British Virgin Islands Limited Liability Company; Miami Film School, LLC, a Florida Limited Liability Company; and Palm Beach Film School, LLC, a Florida Limited Liability Company. In addition to the aforementioned LLCs, Gleissner owns numerous real estate holdings in California, and throughout the United States. Gleissner owns LLCs in Hong Kong, Nevada and Antwerp, Belgium, under the IAFT umbrella. Gleissner owns, controls, and funds IAFT, and all of the other LLCs and entities listed above as part of his business plan to open up film schools in the United States and internationally. Gleissner makes all important decisions involving hiring of key personnel for IAFT and the LLCs, and funds the enterprises through monies held in offshore accounts. All of the real properties Gleissner owns in the United States and in California are held in the names of an LLC, or other similar entity. Gleissner does not own any real property or assets in the United States in his name. The address given by Gleissner to York for purposes of notices was "2/F Beautiful Group Tower, 77 Connaught Road Central, Hong Kong." In the event a judgment is entered against IAFT, and IAFT has no assets to satisfy the judgment, it would be inequitable and unfair if Gleissner was not held accountable as the

-2-

COMPLAINT FOR DAMAGES

alter-ego of IAFT and the other entities listed above. The decision to terminate York's employment, not to pay him wages that are due and owing, and not to reimburse him employer expenses, was Gleissner's as owner of IAFT.

4. Plaintiff is ignorant of the true names and capacity of the Defendants sued as Does 1 through 25, inclusive. Plaintiff therefore sues these Defendants by such fictitious names. Plaintiff is informed and believes, and based thereon alleges, that each of the Defendants named as defendants Does 1 through 25, inclusive, is and was, in some manner, responsible for, participated in or contributed to, the matter and things of which Plaintiff complains herein, and in some fashion, has legal responsibility. Plaintiff will amend the Complaint to allege the Defendants true names and capacities when ascertained.

5. The defendants, and each of them, on information and belief, were the agents and/or principals of each other and were acting in the course and scope of said agency, at all times herein alleged.

6. On August 5, 2010, York and Gleissner entered into a series of agreements that defined their relationship. There is a purchase agreement, by which Gleissner, through his Miami Film School Holding (DVI) LTD Company purchased York's Miami Film School, LLC and Palm Beach Film School, LLC for $550,000.00. The purchase had several components, with the initial $350,000.00 being paid immediately and the remaining $200,000.00 to be paid over time based upon agreed terms and conditions. Also agreed upon on August 5, 2012, was that York would be hired as the CEO of the Florida Film Schools, purchased by Gleissner's Virgin Island's Company. Also on August 5, 2010, a Reciprocal Commission Agreement was executed between York and The International Academy of Film and Television, Incorporated, a Philippines Corporation owned by Gleissner. The

-3-
COMPLAINT FOR DAMAGES

Reciprocal Commission Agreement required Gleissner's Philippine Company to pay commissions of 20 % to York for all students York recruited for any of the film schools that Gleissner presently owned, or that were to be opened in the future. Also executed on August 5, 2012, was a "Guaranty" signed by Gleissner guaranteeing all payments promised to be made to York under the aforementioned agreements.

7. Prior to executing the August 5, 2010 Agreements, Gleissner and York had discussions and came to an agreement as to what would be their relationship. Gleissner's Agreement with York as to their relationship was not placed in a formal writing. In substance, Gleissner wanted York to help him open up film schools in the United States, and overseas, which were modeled on the business plan that York had implemented in opening up the two Florida-based film schools that Gleissner purchased on August 5, 2010. Gleissner originally approached York at one of the open houses York was putting on to attract students to his Miami Film School. In enticing York to work with him, Gleissner disclosed how he had made hundreds of millions of dollars in selling his online textbook company to Amazon.com. Gleissner disclosed he owned a private jet and a 40-story office building in Hong Kong. Gleissner wooed York with his ability to finance the opening up of film schools in the United States and abroad. Gleissner had previously opened up a film school in Cebu, Philippines, which was being managed by Kathleen Andrews who was and is the CEO for IAFT. Gleissner explained to York that his business model was to buy distressed commercial real estate. He would then have York institute the necessary proceedings to open up a film school which would lease commercial real estate in the properties that Gleissner had purchased. Gleissner hired York to teach CEO Andrews how to open and operate film schools based on York's Miami model. This Agreement between

-4-
COMPLAINT FOR DAMAGES

Gleissner and York developed out of 10-15 meetings in a month period of time which culminated with the purchase of York's Miami Film School. Gleissner and York's Agreement was that York would find locations for and open up film schools in the United States and overseas. In exchange, Gleissner would pay him a salary and pay him bonuses based upon the opening of the film school and the profitability of the film schools. There are several Written Employment Contracts which memorialize these Agreements. In order to achieve the profit sharing objectives of the Employment Agreement, a minimum of five (5) to six (6) years are required. The first two (2) years were to obtain accreditation. Accreditation allows students to obtain Government Loans to attend the schools. The remaining three (3) – four (4) years were to build attendance and increase enrollment.

8. After entering into a series of agreements on August 5, 2010, York commenced to operate under an Agreement with Gleissner to run the existing Florida schools and to open up new film schools. York performed under the Agreements by opening up film schools in Hong Kong, Los Angeles, Las Vegas and Antwerp. At the time of his discharge, York's duties as the COO for IAFT was to hire and train executive directors for each school, oversee the business plans so that they were properly executed in each market, create an overseas sales and marketing plans for each market, to provide annual sales projections, profit and loss reporting with input from executive directors, and to update all employees on the schools, troubleshoot and problem solve at each location, oversee accreditation, financial aid requirements and school licensings.

9. On May 30, 2011, Gleissner requested that York sign an Employment Offer which modified the prior terms and conditions of the original Agreement. Gleissner used Bigfoot Entertainment, Incorporated as the employer to hire York on May 30, 2011. Prior

-5-

COMPLAINT FOR DAMAGES

to that time, York's stated employer for tax purposes had been the Miami Film School. In altering some of the terms and conditions of the original Purchase Agreement, Employment Agreement, Commission Agreement and Guaranty, Gleissner, through his company Bigfoot, agreed to pay the remaining $200,000.00 purchase price under different terms and conditions, which included, in addition to profit sharing bonuses, a flat fee of $15,000.00 for each new school that is opened. This new Agreement modified the additional film school payments outline in paragraph three (3) of the March 5, 2010 Purchase Agreement.

10. On August 31, 2011, Gleissner once again, had Plaintiff sign an Offer of Employment with yet another new company he had started, Defendant IAFT. The August 31, 2011 Offer of Employment between York and IAFT was almost identical to the Offer of Employment presented to Plaintiff by Bigfoot Entertainment dated May 30, 2011. The August 30, 2011 Offer of Employment was inconsistent with and contradictory in light of the profit sharing formula. York and the Defendants had agreed that York's initial compensation of $100,000 per year was substantially below the value of York's services to IAFT. The Profit Sharing Agreement, which was restated in the Offer, was at odds with the "At-Will" language in the document. Gleissner and York had discussed and agreed that it would take a minimum of 5-6 years for a film school to achieve the profit levels which would allow for profit sharing under the terms of the Employment Agreement and offer letters. The only plausible and reasonable reconciliation of the contradictory terms between the Employment Agreement is that the "At-Will" status of York's employment would only occur after the schools met the projected profitability levels or 5-6 years, which ever case scenario would fit the situation for the 4-5 schools opened by Plaintiff during his employment with the various Gleissner entities. Therefore, the only reasonable

-6-
COMPLAINT FOR DAMAGES

interpretation of the agreements is that York could only be terminated for cause prior to the profitability goals being met for all the schools. Conversely, Defendants negligently and/or intentionally misrepresented to York the terms and duration of his employment with the various Gleissner entities. York would not have agreed to the terms of the agreements if his employment term could be shortened to prevent him from achieving profit sharing under the terms of the agreements.

11. Los Angeles and Hong Kong film schools were opened in 2011. The flat fee bonus for opening of of those two schools was not paid to Plaintiff until he was discharged from employment on August 22, 2013.

12. York in 2012-2013 as the COO for all of the IAFT Film Schools completed the process for opening new film schools in Las Vegas and Antwerp, Belgium. At the time of Plaintiff's termination on August 22, 2013, the Las Vegas and Antwerp film schools were opened, or ready to be opened, awaiting final approval of the necessary paperwork to allow them to enroll students. At the time of or shortly after York was terminated, the Las Vegas and the Antwerp film schools opened. York was not paid the $15,000.00 flat fee for these two schools. One of the motivations of the Defendants in discharging Plaintiff on August 22, 2013, was so they could argue they did not have to pay York the $30,000.00 they owed him as the flat fee for opening of these two schools because technically no classes had yet started. At the time of the opening of the the Las Vegas and Antwerp schools, York was listed as the COO for each school which were organized under an LLC or similar entity in the state of Nevada and/or in the country of Belgium. Plaintiff was also listed as the COO for IAFT, California, the entity that ran all of Gleissner's schools. York's final paycheck on August 22, 2013 came from the International Academy of Film and Television-Miami,

LLC. That entity was created by Gleissner after he merged the West Palm Beach and Miami Film Schools, eliminating the two LLCs purchased from York and creating the new Miami, LLC entity. There is no Employment Agreement between Gleissner's new Miami LLC and York.

13. After York was terminated from employment, he demanded of IAFT that they pay him his two $15,000.00 flat fees owed for the Las Vegas and Antwerp's film schools. York also demanded that they reimburse him for employer-related expenses. Defendants have refused to honor their obligations under the California Labor Code to pay wages and to reimburse employees for employer expenses. Gleissner by way of email on October 22, 2013 stated that they would not honor any of the employers' obligations "prior to legal proceedings." Defendant IAFT and CEO Andrews have never responded to the repeated requests for payment of wages and reimbursement for expenses.

### First Cause of Action

(Breach of Contracts/Failure to Pay Wages

Labor Code § 203)

14. Plaintiff incorporates by references as fully set forth paragraphs 1 through 13 of the Complaint.

15. IAFT discharged Plaintiff without cause on August 22, 2013, 2-3 years prior to the completion of the Term of Employment. At the time of discharge, IAFT did not pay Plaintiff all wages that were due and owing, based upon Plaintiff's employment contract. The wages include, but are not limited to $30,000.00 in flat fees owed for the opening of the Las Vegas and Antwerp film schools, commissions for all students Plaintiff had enrolled at any of the IAFT campuses, two weeks accrued vacation pay in the amount of $3,845.60,

and profit sharing bonuses, all in amounts according to proof.

16. Plaintiff seeks damages for 2-3 years of lost salary at $100,000.00 per year and/or according to proof. IAFT has violated Labor Code § 203 by not fully paying Plaintiff all wages owed at the time of discharge. A the result of this violation, Plaintiff is entitled to all unpaid back wages, according to proof, with interest thereon at 10 % per annum, and 30 days of additional wages as a penalty under Labor Code § 203(a). Plaintiff also seeks attorney's fees pursuant to Labor Code § 218.5, according to proof.

Second Cause of Action

(Failure to Reimburse Employer Expenses-

Labor Code § 2802)

17. Plaintiff incorporates by references as fully set forth in paragraphs 1 through 16 of the Complaint.

18. Commencing in August of 2010 and continuing to date, Plaintiff has expended monies to pay for IAFT's employer business expenses and has not been reimbursed. Expenses are grouped into two categories consisting of "airline/travel expense" and "Internet Slander Rip-off Report expenses."

19. The travel expenses that have not been reimbursed are for air travel performed while Plaintiff was the COO for IAFT and related entities. Those amounts are according to proof.

20. The internet slander expenses arise from Plaintiff's interviewing of Gregg Himmelstein at the request of CEO Andrews in May of 2013. IAFT had posted a job opportunity on Craig's List. Himmelstein contacted Andrews and provided her a resumé. At the request of Ms. Andrews, York interviewed Himmelstein for the job. In vetting

-9-

COMPLAINT FOR DAMAGES

Himmelstein, York discovered that there were postings on a website "Rip-off Report" concerning Himmelstein. He brought those postings to Himmelstein's attention during the interview process. Himmelstein was not offered the job. In June and July of 2013, postings that were slanderous to Mr. York and IAFT were posted on Rip-off Report. In slandering York, the Rip-off posting stated that he was a convicted felon and had committed fraud, as well as claiming that IAFT had ripped off students and that they were a fraudulent company. Since that time, York has attempted to clear his name. Demand was made that IAFT and Gleissner pay the expenses associated with York clearing his name and they have refused to do so. York hired legal counsel in Cincinnati, Ohio who have filed an action in Los Angeles Superior Court for slander against Himmelstein. Since that filing, it has been discovered that the internet postings on the Rip-off Report were in fact done by Himmelstein who used the false name of Deborah Maxwell on the Rip-off Report postings. The Rip-off Report's postings concerning York are so slanderous that it is virtually impossible for York to get a job in the educational community until these postings are either taken down or a decree of slander against Himmelstein as the poster is entered in a court of law. York has hired lawyers and internet experts in a coordinated attempt to clear his name. The sole legal reason why York has incurred these expenses is because he interviewed Himmelstein at the request of CEO Andrews of IAFT. York's funding of a lawsuit in Los Angeles to clear his name is ongoing.

21. Labor Code § 2802 requires an employer to indemnify an employee for all expenditures or losses incurred as a direct consequence of the discharge of the employee's position. Plaintiff seeks damages against Defendants for all expenses incurred for travel and to clear his name as a result of the Himmelstein slanderous postings on Rip-off Report.

Plaintiff is seeking as damages reimbursement of all employer expenses under Labor Code § 2802 in amounts, according to proof, but no less than $50,000.00 in regard to the Himmelstein slander suit, as well as reasonable costs and attorney's fees pursuant to Labor Code § 2802(c).

### Third Cause of Action

(Violation of Labor Code § 970)

22. Plaintiff incorporates by references as fully set forth in paragraphs 1 through 21 of the Complaint.

23. In the spring of 2013, Plaintiff relocated from Palm Beach, Florida to Los Angeles, California. Prior to relocating, Plaintiff discussed with IAFT CEO Andrews whether it would be better for him to perform his duties as the COO at the corporate headquarters in Burbank, California instead of working out of his home office in Florida. Andrews encouraged and endorsed the move. In Endorsing Plaintiff's relocation to California, Andrews impliedly and/or directly affirmed that Plaintiff's position with the company was of long duration at a minimum of 3-5 years, as they were still in the process of opening up new film schools in Las Vegas and Belgium. Plaintiff's relocation to Burbank was because it was centrally located to service not only the new film schools, but the existing film schools in Los Angeles, Hong Kong and the Philippines.

24. As a result of the false representations and misrepresentations made by Andrews, Plaintiff moved from Miami to California. Prior to the move, Plaintiff entered into a year-long lease on a property in Manhattan Beach, California. CEO Andrews vouched for Plaintiff's continued employment when she provided a reference to Plaintiff's landlord affirming his employment for the term of the one year lease.

-11-
COMPLAINT FOR DAMAGES

25. As a result of IAFT's violation of Labor Code § 970, Plaintiff has been damaged. Those damages include: moving expenses of approximately $2400.00; five (5) month's payment under the one year lease at $2700.00 per month, in the amount of $13,500.00; and/or $2600.00 a month mortgage payments on Plaintiff's Florida home for the time that he had lived in Los Angeles post-termination; all according to proof. Plaintiff also is seeking as damages a civil penalty of double damages under Labor Code § 972 and/or attorney's fees according to proof.

### Fourth Cause of Action

### (Wrongful Termination/Age Discrimination)

26. Plaintiff incorporates by references as fully set forth in paragraphs 1 through 25 of the Complaint.

27. Defendants have violated the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 621-634) (ADEA) and California Fair Employment and Housing Act (Government Code §12900, *et seq.*) (FEHA) and specifically, Government Code §12940 (a) by discriminating against Plaintiff in discharging him from employment because of his age.

28. At the time of Plaintiff's wrongful discharge he was 60 years of age. He was satisfactorily performing his job as COO and was given high praise by his fellow workers for his abilities. After Plaintiff was discharged his job was staffed by significantly younger workers. The reason given by Gleissner for Plaintiff's termination was "cost cutting." This decision is belied by the postings and new hires that the Defendant was undertaking at the time of Plaintiff's discharge, many of whom were significantly younger individuals who were assigned Plaintiff's job responsibilities.

29. After Plaintiff relocated to California, CEO Andrews hired her husband, a

-12-

COMPLAINT FOR DAMAGES

man in his early 40's, for a key marketing position. Andrews also hired a new Director of Admissions who was in his late 20s, a new Executive Director of the Las Vegas branch, and a new Executive Director of the L.A. branch, all of whom were significantly younger than Plaintiff and who were hired to perform Plaintiff's job duties.

30. In addition to replacing Plaintiff with significantly younger individuals, comments were made by Andrews' husband, in her presence to Plaintiff such as: "Jim's a dinosaur," "that may have worked way back then, but it won't work now," York was called "old school," and it was stated on multiple occasions that York "needed to catch up with the times" as well as "things are different now," including, that York's ideas and methods were "outdated and old school."

31. Plaintiff obtained Right to Sue letters from the DFEH and the EEOC. He seeks all General and Special damages recoverable for wrongful discharge in violation of public policy, including, but not limited to lost wages, damages for emotional distress and anxiety and attorney's fees according to proof.

Fifth Cause of Action

(Wrongful Termination-Whistleblowing/Retaliation)

32. Plaintiff incorporates by reference as fully set forth paragraphs 1 through 31 of the Complaint.

33. In June/July of 2013, the Miami Film School was permitted to issue I-20s, which is a student visa to allow students to come to the United States to attend the Miami Film School. Since the attack by terrorists on the World Trade Center on September 11, 2001, the Federal Government has stringently enforced the requirements that schools which issue I-20s to foreign students comply with the federal regulations. Those regulations

-13-

require that any time that there is a change in ownership or control of a school that issues I-20s; they must re-apply to the Federal Government for that privilege. Kelly Duke, the Campus Director for the Miami Film School, actively solicited international students under the representations that they could obtain an I-20 Visa to come and attend the school. When Plaintiff found out about Ms. Duke's marketing to foreign students, he immediately advised IAFT and Ms. Duke of the requirements that because of the change of ownership (York had sold the Miami Schools to Gleissner), Change of Ownership forms needed to be filed with the Federal Government. No new Change of Ownership notification was sent to the Federal Government, and York was still listed as the owner after sale of the school to Gleissner. As a result of Ms. Duke's actions, Mr. York, who is listed as the owner of the Miami Film School, notified the Federal Government of the need for the Miami Film School to update their application on August 6, 2013. In retaliation for whistleblowing to the Federal Government, York was terminated from employment on August 23, 2013.

34. IAFT's termination of Mr. York's employment for reporting to the Federal Government that the Miami Film School had not filed the appropriate Change of Ownership paperwork violates Government Code §12653(b) and California Labor Code §1102.5(b). Plaintiff seeks all damages for his wrongful termination from the Defendants, including, lost wages, general and special damages according to proof, damages for emotional distress, and mental anxiety, penalty not exceeding $10,000.00 pursuant to Labor Code §1102.5(f) and attorney's fees according to proof.

### Sixth Cause of Action

(Declaratory Relief/Accounting/Reformation)

35. Plaintiff incorporates by references as fully set forth paragraphs 1 through 34

-14-

of the Complaint.

36. Commencing in August of 2010 and continuing to this date, Plaintiff and Defendant have been governed by a series of written agreements as it relates to the sale of the Miami Film School, York's employment as the COO of IAFT and related Gleissner entities, and York's entitlement to fees, bonuses, commissions, expenses and profit sharing, arising out of his work for Gleissner.

37. A dispute has now arisen between Plaintiff, and the Defendants, regarding their rights, liabilities and obligations in regard to Plaintiff's rights to wages, bonuses, commissions, profit sharing, fees and expenses under the various written Agreements. Plaintiff seeks a Judicial Declaration of those rights and liabilities, including whether the "At-Will" language in the Offers of Employment would apply before the schools opened by York met their profitability goals in 5-6 years. Alternatively, the various employment agreements must be reformed to represent the true intentions of the parties based upon unilateral and/or mutual mistake; and/or that the at-will language in the offers of employment be declared and adjudged unenforceable due to negligent and/or intentional misrepresentations made at the inception of the relationship in August 2010.

38. Plaintiff seeks an accounting of all of the film schools earnings to determine whether or not he is entitled to profit sharing as promised to him in his employment agreements. Plaintiff seeks an accounting regarding all commissions he is owed for students enrolled at the schools. Plaintiff seeks an accounting and reimbursement for all employer expenses that were not reimbursed to Plaintiff during his term of employment, and since his discharge, for Plaintiff having to hire individuals and attorneys to clear his name based upon the slanderous statements made about him in the Rip-off Report. Plaintiff seeks an

-15-

COMPLAINT FOR DAMAGES

accounting and reimbursement of all unreimbursed employer expenses associated with his performing his services as the COO of the IAFT and the Gleissner companies, including travel related expenses.

Seventh Cause of Action

(EXEMPLARY DAMAGES)

39. Plaintiff incorporates by references as fully set forth paragraphs 1 through 38 of the Complaint.

40. The Defendants wrongful termination of Plaintiff in violation of public policy with the attendant infliction of emotional distress, coupled with their multiple violations of the Labor Code by: (1) failing to pay wages; (2) refusing to reimburse Plaintiff for employer expenses; and (3) making misrepresentations to plaintiff which enticed him to move to Los Angeles, California from Florida, rises to the level of Fraud, Oppression and Malice as those terms are defined in Civil Code Section 3294 entitling Plaintiff to exemplary damages for Defendants Malicious conduct according to proof.

41. The malicious acts of Defendants justifying an award of exemplary damages to punish Defendants include, but are not limited to: (1) discriminating against Plaintiff because of his age; (2) retaliating against Plaintiff for his reporting Defendants to the Federal Government for non-compliance with the requirements to be eligible to issue Visas for foreign students at the Miami Film School; (3) Enticing Plaintiff to move to Los Angeles and sign a one year lease when the Defendants knew Plaintiff would be terminated shortly after his move; (4) discharging Plaintiff shortly before the official opening of the Las Vegas and Belgium film schools in order to deny him the two $15,000.00 fees for opening of the schools; and most egregiously, (5) refusing to reimburse and assist Plaintiff in clearing his

name after Himmelstein's slanderous posting on "Rip Off Report" and after Defendants had hired and initiated actions to clear IAFT's name because of the same postings while ignoring and/or not addressing or defending Plaintiff for those same slanderous postings thereby tacitly approving the defamatory statements directed jointly at Plaintiff and IAFT.

**WHEREFORE, PLAINTIFF PRAYS FOR JUDGMENT AS FOLLOWS:**

1. For damages for Breach of Contract and all unpaid wages pursuant to Labor Code §203, according to proof and attorney fees pursuant to Labor Code §218.5 and Civil Code Section 1717;

2. For reimbursement of all employer expenses pursuant to Labor Code §2802 and attorney fees according to proof;

3. For all damages for the misrepresentations made by the Defendants in violation of Labor Code §970, including doubling of the damages as a penalty pursuant to Labor Code §971;

4. For all damages recoverable for wrongful termination/age discrimination, including, loss of earnings, damages for emotional distress, general and special damages and attorney's fees pursuant to Government Code §12965(b) according to proof;

5. For all damages for Wrongful Termination in Retaliation for Plaintiff's whistleblowing, including, loss of earnings, damages for emotional distress, general and special damages and attorney's fees pursuant to Government Code §12965(b) according to proof;

6. For a declaration of the rights, liability and obligations as between Plaintiff and Defendants arising out of his employment, his entitlement to profit

-17-
COMPLAINT FOR DAMAGES

sharing and commissions, his entitlement to receive the benefits of the employment agreement promising profit sharing, commissions, bonuses and fees, and reimbursement for all employer-related expenses;

7. For attorney's fees according to proof;

8. For general and special damages according to proof including emotional distress damages for Wrongful Termination of Plaintiff's employment in Violation of Public Policy in the state of California;

9. Exemplary Damages pursuant to Civil Code Section 3294 according to proof:

10. The costs of suit herein;

11. For other and further relief as the Court may deem just and proper.

Respectfully submitted:

DATED: October 28, 2014

MOORHEAD & SPARKS

_____
Jeffrey C. Sparks
Attorneys for Plaintiff,
JAMES YORK

-18-
COMPLAINT FOR DAMAGES